May it please the Court, I'm Robert Grobe. I'm appearing today on behalf of the petitioner Balbir Singh. Could you talk a little more directly into the mic, of course? Thank you. Although Mr. Singh was twice arrested and tortured in India, he can establish past persecution only if he can show that he was harmed, at least in part, on account of his political opinion. The first decision in Kumar v. Gonzalez, the 2006 decision, is controlling. In that case, you had somebody who was another Indian national who was arrested and tortured, and the Court found that the evidence compelled the conclusion that it was at least in part on account of political opinion for three reasons. First, the Court noticed, pointed out that he had been interrogated regarding the whereabouts of a suspected terrorist and a Muslim separatist. Secondly, he was asked to disclose the identities of Muslim terrorists and reveal information about their planned activities. And the third factor was that he himself had been suspected of terrorist activities. All of those factors are present in this case, and that's even not considering his written statement. I just want to walk through that. First off, the police who tortured Singh, they demanded to know the whereabouts of a suspected militant, Lali, and his two associates, who they claimed had an association with the militants. Second, although Singh insisted that he didn't know either of Lali's associates, his interrogators insisted that he did, suggesting that they believed that he was somehow associated with the group that the police was trying to locate. They accused Singh of lying and trying to hide the fact that Lali visits, in the present tense, visits him, saying, you're not telling the truth, Lali visits you. But the clincher here, I think, is a reference to the bomb blast. Because, as in Kumar, they suggested that Singh himself was involved in terrorist activities. The interrogators noted that there had been a bomb blast in Jalandhar, and then they turned to Singh during the interrogation, as they're presumably torturing him, and they said, tell us about that. The clear implication of that is that he was either involved or in the bombing, or he was associated with people who were involved in the bombing. So, it's a political opinion, or is that law enforcement gone awry? Well, under Kumar, Your Honor, it's both. It's a question, there's, certainly there's a legitimate investigation at issue, but, you know, as this point, as this court pointed out in Singh, even in the, even in the context of a legitimate investigation, there can be persecution on account of. This was the case where the two of them had known each other since childhood, and they if the police are conducting an investigation for, to find a fugitive, it would be logical to go to people who are known, long-time associates of the fugitive, to ask them if they have any knowledge as to his whereabouts. And if that were the only evidence in the record, then wouldn't you concede that we could not find imputed political opinion just because the guy happens to also be a wanted terrorist? If that were the only evidence in the record, yeah. But in this case, again, I think the facts of this case, they're indistinguishable from Kumar. And Kumar answers your question directly, Your Honor. It says, you know, even in the context of an investigation where they're trying to locate people who are suspected of terrorist activities and they arrest somebody who is an associate of that person, when they imply or they torture somebody suggesting that that person himself is involved or associated with these militants, that's on account of political opinion. And given the holding in Kumar, that's a pre-Real ID Act case, the facts are indistinguishable. Irrespective of whether you look at his written statements in the affidavit that he supplied, which I think only confirm the point that I'm making here, you have to find that Kumar is controlling, and this is at least in part, persecution on account of political opinion. Because that's the test. This is the mixed motive concept. Exactly, Your Honor. And it's a pre-Real ID Act case, so we don't have to show that this was a central motive, nothing like that. We just have to show that he was persecuted, at least in part, because of a suspicion that he was associated with these separatists. So is your position that if during the interrogation the police ask the question, aren't you a sympathizer with this guy, that that then imputes the political opinion? Well, that would be direct evidence of imputation, but we don't need that kind of direct evidence, obviously. That's an open-ended question. Are you, in essence, a sympathizer with this fugitive? Is that enough? If they're accusing him of ... Under the ... Maldonado-Cruz and Kumar ... Political isn't an accusation, it's a question. And I guess what I'm trying to find out from you is, does our case law say that's enough? Yes, it does. The case is ... I think Kumar stands for that part. Kumar and Maldonado-Cruz expressly hold that if you're tortured because of an association or a suspected association with separatists, anti-government separatists, that is a classic example of imputed political opinion. And in both of those ... Any time that the police look for a wanted person and they interrogate someone asking for the whereabouts of that person, I thought you said earlier that wouldn't be enough to impute. What I'm saying is, if they suspect that ... You're leaving out the torture, Your Honor. If they're simply looking for somebody and they question that person, no big deal. I'm not condoning hanging people up by their ankles and rolling them on logs and all the other things we see in the back of them. But I'm trying to discern the analytical line here that our cases say is cross. The critical point is that this is a pre-real ID case. And in such a case, this man, he has the burden of only establishing that he was harmed, at least in part, because of an Maldonado Cruz and Kumar both expressly hold that if you're tortured because of a suspected association with terrorists, that is at least in part on account of political opinion. If we're going to follow precedent, you need to grant this petition on that point. Now, on the cat claim, I guess the threshold question on the cat claim is, which decision are we reviewing? Because the board reviews the likelihood that somebody's going to be tortured under their own precedent, they review that de novo. But in this case, they didn't adopt the immigration judge's decision. They didn't incorporate by reference any part of the IJ's decision. And in fact, they didn't even cite to it. The immigration judge had a lengthy discussion about, in the cat context, about why this person, he failed to meet his burden of proof, showing that he could not safely relocate. The board didn't adopt any part of that. But the immigration judge also rejected or discounted Singh's testimony that the police had been looking for him as recently as 2008. IJ discounted that as hearsay. The board didn't do that. In its de novo review, it accepted that testimony, but found that it was undermined by other evidence in the record. What do we do with the board's findings that the country conditions have changed? Well, let's walk through those, because I find those kind of ridiculous, given that they credit his... Well, one of the reasons was that they elected a Sikh prime minister. You don't contend that that's a ridiculous... No, I think it certainly doesn't show that a Sikh prime minister isn't going to go after somebody who's accused of associating with terrorists. That makes no sense to me. But the question is whether or not he's likely to be tortured in the future. Exactly. And the board cited the political change that I just mentioned, changing attitudes toward the Sikh religion and the success of the Sikh counterinsurgency campaigns, and essentially restoring peace to the region. Are those... But the police aren't looking for him because he's a Sikh, Your Honor. All that analysis... We're talking about the Kat claim, aren't we? Pardon me? We're talking about the Kat claim. Exactly. The police aren't looking for him because he's a Sikh. They're looking for him because he's suspected of associating with terrorists. And I don't care whether you have a Sikh prime minister, they're going to continue to seek out people who are associated with Sikh terrorists. The board, when they looked at this, for example, they said conditions have changed dramatically since the 80s and 90s. Well, how does that advance their position? They accept that the police were looking for this guy in 2008. Yeah, conditions changed in the 1980s and 90s. Well, they were looking for him in 2008. Have we gone then from imputed political opinion to carrying out terrorist activities? Pardon me? Have we gone further than imputed political opinion into you're now a suspected terrorist? No, no. I'm saying that he's clearly wanted by the police. As of 2008, the police are trying to track this man down. So when the board says that conditions have changed for him because he's a Sikh, they're looking for him because he's associated with terrorists. The mere fact that conditions may have changed generally for Sikhs, that doesn't do much for this particular applicant. Suppose somebody was a sympathizer with a cause that has now been, for the sake of a better term, eradicated. It no longer exists. Why would the police be interested in a sympathizer for a cause that is no longer active? Well, because it's not completely eradicated, Your Honor. And the important thing here is that there's an unsolved bombing in Jalandhar. Of course they're going to want to solve that bombing. So you think they would view him, regardless of being a Sikh or whatever else, as a material witness to where Lali is? Is that it? Well, that's part of it. But the bigger issue is the bombing in Jalandhar. They asked him Are you suggesting they thought he was a bomber? I'm suggesting that their question certainly implied that he had inside knowledge about that. You don't just pull somebody out of the blue and say, hey, tell us about this bombing. They suggested that he He said at his hearing that he kept saying they wanted me because they knew where Lali was. Right. In his written statement, he said they also accused him of being involved with or helping the militants. Do you depend on the written statement to No, I'm not. I think the written statement supports our position. But the government just completely ignores the evidence on page 844 because what he said exactly is they first And then he says, and then they said there was a bomb blast in Jalandhar. Tell us about that. The plain implication of that, the insinuation, is that he has inside knowledge about this bombing. We can't read the mind of the police officers. But the mere fact that generally the situation has changed for Sikhs since the 90s, that doesn't help somebody who the police believe is either implicated in a bombing or is associated with the people involved in that bombing, especially given the uncontradicted evidence that the police were continuing to look for this guy in 2008. So the changes that the board points to in the 80s and 90s, that doesn't undermine this guy's claim that he's in danger today. Thank you, Mr. Joe. Thank you, Your Honor. Good morning, Your Honors. Good morning. Joseph O'Connell on behalf of the Attorney General. Your Honors, the record in this case does not compel the conclusion that the Indian police imputed a political opinion to Mr. Singh or harmed him because of it. The prisoner suggests in a passing statement made in his asylum application, in the written statement, that by itself is enough to satisfy his burden of proof. But when you look at the record as a whole, it's simply not the case, especially in light of his explicit testimony before the immigration judge. Now, of course, I'm aware that this is not an adverse credibility case and that the court deems the applicant's testimony is true in the absence of such a finding. But that being said, it would be impossible to deem all of his allegations as true because they're all so different. There are so many different narratives in this case. So I know the court wanted the parties to address the K. Singh case, so I'll do that, and I'll tell you, Your Honors, how this case is different. In K. Singh, the Indian police accused the petitioner of being a traitor and of working against the government. Now, K. Singh explicitly testified to that before the immigration court. Doesn't the petitioner here say essentially the same thing in his declaration? In the declaration, but he never said as much in the testimony before the immigration court. That doesn't mean the evidence isn't there in the record. There is evidence in the record, but I would consider this more of a weight-to-the-evidence case as opposed to an adverse credibility case where there's inconsistencies. So we have this declaration on the one hand, and it says certain things. It's in this asylum application, which he changed 13 times, including how many arrests, how many siblings he had, all these different things. And then we have these three or four hours of testimony for the immigration court where he said… Just to clarify, the I.J. didn't fault his credibility? The I.J. faulted his credibility in the first decision, but the board reversed that credibility? Yes. Yes, so that's correct. He was deemed credible. So we accept what he says is credible? The I.J. accepted his testimony as credible. We accept as credible on our review. Correct, Your Honor. Yes, Your Honor. And so he was tortured. He was kept for prolonged periods of time, correct? We're deeming that credible, yes, Your Honor. Yes, okay. And he said in his written statement that, with or without, K. Singh makes the implies that the police think you're sharing those views. Now, this is pre-real ID, and we have mixed motive jurisprudence in this circuit, so why doesn't that at least suggest that there was at least the suspicion of guilt by association that would justify an imputed political opinion? Again, Your Honor, a trier of fact Circumstantial without the written, direct evidence with the written. Again, a trier of fact could hypothetically reach that conclusion, but again, in this instance, K. Singh is distinguishable because, in this case, there was no explicit testimony. He never said this. On direct examination, he said four times, you know, why are they out, they said, are the police still interested in you? Yes. Why? Because they want to find Lolly. Is there any other reason? No. It's not because of your Sikh religion? No. He said that on direct examination four times and on cross-examination. He never said, he could have said it at any point during the immigration proceedings. So again, we have this written statement, and then we have this testimony. But again, that written statement is not reliable because there's so many different narratives. And if I can give you an example of that, the I.J. noted that in his written statement, he said that his first detention lasted eight days and his second detention lasted ten days. Now, when he's testifying, they asked him on direct examination, how long did your first detention last? He said a month and a half compared to the eight days. So, I mean, if we're deeming incredible, how do we, which one do we choose here? And on the second one, I'll give you a direct quote. They said, how long did your second detention last? And this is a petitioner. One month, 15 days, 20 days, one month and ten days, unquote. That was his response. So if we're deeming him credible and we deem his allegations true, which one is the immigration judge supposed to believe? I mean, which one is the narrative that we're going with here to determine, you know, whether or not he qualifies for asylum withholding or removal? Again, I think the case in case is distinguishable because there was explicit testimony in the case that said, you're a traitor and you're operating against the government. That didn't happen here. I think this case, and in Singh, they also said that the DENU case, which the agency relied on, it applies only to cases in which an asylum applicant is the subject of a legitimate law enforcement investigation. Now, the bomb blast in Jalandhar, which Petitioner's Counsel mentioned, is what disqualifies Mr. Singh in this case from qualifying for asylum or withholding or removal, because the police in this case had a legitimate law enforcement purpose in detaining him. Again, as Your Honor noted, they were looking for this lolly guy. And, you know, who do they do? What does any police officer do in the United States? They go to the known associates. They go to their friends. We think you have contact with him. Where is he? That is a legitimate law enforcement purpose. I asked you about his declaration. In his declaration, he says, they accused me of helping support the militants and of being involved with them. Suppose he had testified to that. It wasn't just in his declaration. Suppose he had said that. Then what would be the situation? I think the agency would have to decide that in the first instance, but again, I think that would probably qualify under the case in case. So I think that would be different. I think the outcome might be different. But again, I can't speak on behalf of the immigration judges. I can only defend what they said. Well, I take your point that they have to kind of weigh the declaration against the testimony, but they didn't have the benefit of casing at the time to do that when they were doing their weighing. Correct. But I do think that casing is distinguishable because of both sides. Well, maybe they can distinguish it, but maybe they would not want to distinguish it. I mean, why shouldn't we say to the agency, you didn't have casing. Now you do. Go back and put it all in the hopper and see where it comes out. Respectfully, I don't think that's necessary because I still don't think casing applies. I think this is a DNU case and not a casing case because of the explicit testimony and because, you know, he never reaffirmed that allegation before the immigration judge. No, wait a minute. You did say if whatever's in the written statement were taken into account, then it would be a casing case? If, contrary to the agency's holding here, that you deem whatever he said in that written declaration as true and accurate. It is. It's part of the record. It's part of the record, but again, we have these differing narratives. We have to look at the entire record, don't we? Yes, but looking at the entire record. Okay, and you just said if the written statement is taken into account, then it would qualify under casing. If you deem that as the accurate narrative. But there are so many different narratives. Okay, so at a minimum, what Judge Silverman suggests is the BIA needs to take a look at that or the IJ does. The IJ looked at it. Okay, then the BIA does. You're saying, well, they didn't evaluate the credibility. I guess I'm not following your argument. It is in the record. It is in the record, absolutely. Okay, and the reason we shouldn't take it into consideration is what? It is in the record, and I'm not saying the court shouldn't take it into consideration, but I'm saying that the agency is the fact finder in this case. And they looked at the record. They looked at the entire record. Did they address the written statement? Yeah, absolutely. And in doing so, they did it in the adverse credibility determination. The IJ was very well aware of the written statement. That's what I'm saying. Did the BIA address that? I don't know if the board was explicit in saying the written declaration, but the board did state explicitly. He did not state at the hearing that they accused him of being a Sikh nationalist or a Sikh separatist. So, again, I would look at this as a weight to the evidence. And, again, under the standard of review, does the record evidence as a whole compel the political opinion to him? Well, you've already said this. If the record as a whole included the written statement, then casing would apply. And we have no BIA ruling on the record as a whole. They have not opined as to whether the written statements are not credible or just the mere fact that he didn't repeat it at the hearing because he may not have understood it as critical to his case either. Well, you know, I'm a little bit confounded why you would sum up and say the record as a whole, having conceded that if the record as a whole includes the written statements, he would qualify. Okay. What are we supposed to do with that? Just ignore the fact that the BIA didn't address it? I wouldn't necessarily state that the board didn't address it. The board said in its decision he did not state at the hearing. Yeah, but that doesn't explain why they discounted the written statement. Again, I think there were so many different narratives. And, I mean, again, they said at the hearing. I don't think that statement excludes the fact that they didn't consider his written statement because, again, they reversed that IJ's credibility determination and they cited that written statement. So they knew it was in there. But, again, I think this is a weight to the evidence issue. And does the evidence compel a conclusion that's contrary to the agency's? And, again, I mean, we have these different narratives and we have his direct testimony. I mean, you can take it from an asylum application that was filed in 2000 by an attorney that I don't even know. So you're out of time. Well, well, well. But in any event, of course, you've got to disprove it. Thank you very much. Mr. Jobe, you're out of time, but we'll give you a minute in rebuttal. Again, the case that's most directly on point here, it's not casing. Casing is a post-real ID act case. The burden of proof is different. It's a higher burden. We're not claiming that we even meet that burden. We could if we consider the evidence in the affidavit. But we don't need to go there. The case that's directly on point is Kumar. It's pre-ID act. And the facts are almost exactly like the facts in this case. And the Court found compelling evidence that it's at least – that the torture was at least in part on account of political opinion. The crime here that they were investigating Lally for was a bombing, right? They were investigating Lally, his two associates. And when they told the Petitioner in this case there was a bombing in Jalandhar, tell us about that again from our opinion. In our opinion, the clear implication is that they suspected him of at least having knowledge of what was going on. Let's change the facts. Let me ask you a hypothetical. Suppose instead of investigating a bombing, they're investigating a bank robbery. Right. Would that change? Would that change the result? Under our case law, yeah. That Ninth Circuit case law changes. So we have to look at what the motive of the underlying crime was? You have to look at was it a crime committed by a separatist movement, an anti-government? Suppose someone puts a bomb at a marathon in Boston. Right. Is that a – what kind of crime is that? Under our pre-real ID act case law, if the person's tortured, that's a legitimate investigation. But under our case law, pre-real ID act, it's also in part on account of political opinion. I just want to address the affidavit real quick because what the government's asking you to do is decide in the first instance why the affidavit should not be given any weight. Neither the IJ nor the Board of Immigration Appeals gave any explanation as to why they're not considering the statement set forth in that affidavit. And it was marked as an exhibit, was it not? It was marked as an exhibit, and there's nothing inherently inconsistent with the statements that he's describing in there that the police made to him while he was being interrogated with the statements he made at the hearing. Thank you, Mr. Jones. Thank you. Mr. O'Connell, thank you. The case just argued is submitted. Good morning, gentlemen.
judges: Silverman, Fisher, Tallman